# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA MARIE HEILMAN, | No. 2:15-CV-00187-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| Carolyn W. Colvin, | |
| Acting Commissioner of Social Security, | |
| | ECF Nos. 15, 17 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 17).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

1  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

2  capable of performing other work; and (2) such work "exists in significant numbers

3  in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v.*

4  *Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

5  **ALJ'S FINDINGS**

6  Plaintiff applied for Title XVI supplemental security income benefits and Title

7  II disability insurance benefits on June 23, 2011, and February 6, 2012, respectively.

8  In both applications, Plaintiff alleged a disability onset date of January 1, 2009.  Tr.

9  188-90, 191-96.  The applications were denied initially, Tr. 104-07, and on

10  reconsideration, Tr. 109-111.  Plaintiff appeared at a hearing before an

11  Administrative Law Judge (ALJ) on September 6, 2013.  Tr. 41-74.  On November

12  8, 2013, the ALJ denied Plaintiff's claim.  Tr. 15-40.

13  As a threshold issue, the ALJ found that Plaintiff met the insured status

14  requirements of the Act with respect to her disability benefit claim through

15  December 31, 2007.  Tr. 20.  At step one, the ALJ found that Plaintiff has not

16  engaged in substantial gainful activity since the alleged onset date, January 1, 2009.

17  Tr. 20.  At step two, the ALJ found that Plaintiff has the following severe

18  impairments: degenerative disc disease – cervical, thoracic, and lumbar spine;

19  obesity; bipolar disorder; anxiety disorder; and borderline personality disorder.  Tr.

20  20-21.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals a listed impairment.  Tr.

21.  The ALJ then concluded that Plaintiff has the RFC to perform a range of light

work, with the following additional limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, or ladders, but can never climb ropes or scaffolds; she should avoid concentration exposure to unprotected heights, excessive vibration, and moving machinery; she would be limited to simple, routine, and repetitive tasks; she should not be required to perform at a fast-paced production rate; she should avoid all interaction with the general public; she could tolerate superficial interaction with co-workers in small group settings; and she could have occasional interaction with supervisors.

Tr. 25-26.

At step four, the ALJ found that Plaintiff is unable to perform her past

relevant work.  Tr. 32.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as

housekeeper/cleaner, cannery worker, and retail pricer/marker.  Tr. 32-33.  On that

basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social

Security Act.  Tr. 34.

On May 24, 2015, the Appeals Council denied review, Tr. 1-3, making the

Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. §

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

1

**ISSUES**

2    Plaintiff seeks judicial review of the Commissioner's final decision denying

3 her supplemental security income benefits under Title XVI and disability income

4 benefits under Title II of the Social Security Act.  ECF No. 15.  Plaintiff raises the

5 following issues for this Court's review:

6    1.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

7    2.  Whether the ALJ properly weighed the medical opinion evidence.

8 ECF No. 15 at 14-15.

9

**DISCUSSION**

10 **A.  Adverse Credibility Finding**

11    First, Plaintiff faults the ALJ for failing to provide specific findings with clear

12 and convincing reasons for discrediting her symptom claims.  ECF No. 15 at 15-18.

13    An ALJ engages in a two-step analysis to determine whether a claimant's

14 testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

15 determine whether there is objective medical evidence of an underlying impairment

16 which could reasonably be expected to produce the pain or other symptoms alleged."

17 *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

18 required to show that her impairment could reasonably be expected to cause the

19 severity of the symptom she has alleged; she need only show that it could reasonably

20

have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible." Tr. 26.

### 1. Lack of Objective Medical Evidence of Physical Limitations

First, the ALJ found that the objective medical evidence did not support the degree of physical limitations alleged by Plaintiff. Tr. 26. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ set out, in detail, the medical evidence regarding Plaintiff's impairments, and ultimately concluded that her allegations were inconsistent with the medical evidence. Tr. 26-31. The ALJ relied on the fact that the medical records showed that prescribed medication effectively controlled Plaintiff's symptoms. Tr. 26-27. For example, some of the earliest medical records indicated Plaintiff had a history of back pain, but she reported that her pain was controlled with medication. Tr. 26-27 (citing Tr. 304) (Plaintiff reported in April 2009, three months after onset, that her back pain was controlled with Naprosyn, and she usually took only one

1   Vicodin or less a day).  Similarly, in November 2009, Plaintiff reported that the

2   change of medication to Savella helped her back pain, Tr. 27 (citing Tr. 310), and in

3   August 2010, Plaintiff reported that her headaches and neck pain were "much

4   improved" shortly after she was prescribed Imitrex.  Tr. 27 (citing Tr. 316, 319).

5       The ALJ also relied on physical examinations that yielded essentially normal

6   findings.  Tr. 26-28.  The ALJ noted that an examination in May 2011 by Susan

7   Dennie, ARNP, was largely normal.  Tr. 27 (citing Tr. 357).  Ms. Dennie observed

8   that although Plaintiff's spine was positive for posterior tenderness, there was no

9   paravertebral spasm; flexion and rotation were normal; seated straight-leg raising

10  was negative; and gait and balance were intact.  Although Ms. Dennie diagnosed

11  cervicalgia and low back pain; significantly, she further reported that there were no

12  signs of impingement indicating the need for further studies, such as an MRI.  Tr. 27

13  (citing Tr. 357).  In December 2011, reviewing doctor Robert Hoskins, M.D., opined

14  that Plaintiff was able to perform light work, with additional limitations.  Tr. 27

15  (citing Tr. 95).  Further, the ALJ explained that although Plaintiff reported she could

16  only walk a half block, sit for fifteen to thirty minutes, and stand for up to thirty

17  minutes, an independent medical examination (IME) by Dr. Rose in January 2012

18  was essentially normal.  Tr. 27 (citing Tr. 421-26).  Plaintiff told Dr. Rose that

19  physical therapy had not been effective, but she found chiropractic treatment helpful.

20  Tr. 421.  Dr. Rose diagnosed degenerative arthrosis, cervical, thoracic and

1    lumbosacral spine, without current evidence of radiculopathy.  Tr. 27 (citing Tr.

2    423).  He noted no specific spinous process tenderness or paravertebral spasm (Tr.

3    422), normal sensorimotor discrimination, adequate balance, a normal gait, and

4    negative Romberg signs.  Tr. 27 (citing Tr. 423).  Motor strength was 4-5/5 in all

5    extremities.  *Id.*  The ALJ found that Dr. Rose's findings do not support the level of

6    limitation Plaintiff alleged.  Tr. 28.  The ALJ noted that, also in January 2012,

7    Plaintiff saw Dr. Johnson for increased back pain.  Plaintiff attributed the increase in

8    pain to stress.  Dr. Johnson prescribed pain medication.  Tr. 28 (citing Tr. 498).  The

9    ALJ relied on little to no medical evidence of back pain until April 2013, when

10   Plaintiff complained of neck pain radiating to her left arm.  Tr. 28 (citing Tr. 701).

11   At this time, Plaintiff declined a physical therapy referral; instead, she was given a

12   referral for an orthopedic assessment.  Significantly, the ALJ noted the record is

13   devoid of evidence indicating that Plaintiff ever followed through with the

14   orthopedic referral. Tr. 28 (citing Tr. 702), indicating symptoms were less severe

15   than alleged.  Moreover, the ALJ relied on records showing that, in December 2011,

16   Plaintiff left town to help care for her ill father, and reported no difficulty in doing

17   so.  Tr. 27 (citing Tr. 418).

18       Because an ALJ may discount pain and symptom testimony based on lack of

19   medical evidence, as long as it is not the sole basis for discounting a claimant's

20

testimony, the ALJ did not err when he found Plaintiff's complaints exceeded and were not supported by objective and physical exam findings.

## 2. *Lack of Objective Medical Evidence of Psychological Limitations*

Second, the ALJ found that the objective medical evidence did not support the degree of psychological limitations alleged by Plaintiff.  Tr. 28.  As already noted, subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments.  *Rollins*, 261 F.3d at 857; *see also Burch*, 400 F.3d at 681.

The ALJ set out, in detail, the medical evidence regarding Plaintiff's psychological impairments and ultimately concluded that her allegations were inconsistent with the medical evidence.  Specifically, the ALJ noted there is "a significant difference of opinion between the accepted medical sources" as to Plaintiff's mental limitations.  Tr. 22.  For instance, the ALJ noted reviewing psychologist Edward Beaty, Ph.D., opined Plaintiff is mildly limited in daily activities, moderately limited in social functioning and concentration, and has had no episodes of decompensation.  Tr. 22 (citing Tr. 93).  In contrast, one of Plaintiff's treating physicians, Dr. Bot, opined Plaintiff is moderately limited in daily activities, moderately limited in social functioning, *markedly* limited in concentration, and had experienced four or more episodes of decompensation.  Tr. 22 (citing Tr. 446).  In

1  further contrast, examining psychologist Dr. Bostwick opined Plaintiff is moderately

2  limited in daily activities, moderately limited in concentration, *markedly* limited in

3  social functioning, and had experienced four or more episodes of decompensation.

4  Tr. 22 (citing Tr. 461).

5         In considering Plaintiff's credibility in light of the contradictory opinion

6  evidence, the ALJ noted first, that although Plaintiff has a long history of reported

7  mental health symptoms, she was able to work despite her condition prior to onset,

8  suggesting these long-standing symptoms were not as limiting as alleged.[1]  Tr. 28

9  (citing Tr. 347) (in May 2010 Plaintiff told Dr. Buzogany that she had battled

10  "affective destabilization since her teenage years").

11        Next, the ALJ relied on the observations of treating and examining sources

12  who noted essentially normal function.  Tr. 28.  For example, in May 2010, although

13  Plaintiff has a "rather intrusive manner," she was pleasant and cooperative; her

---

14  [1]Plaintiff contends the ALJ erred when he found she was able to work, even with

15  mental health symptoms, because she "was fired from a job for poor performance."

16  ECF No. 15 at 16 (citing Tr. 53, 61-62).  The record contradicts Plaintiff's

17  statement.  *See* Tr. 62 (Plaintiff admitted she worked at Geotech for over a year, and

18  ITT for over two years); Tr. 470 (Plaintiff said she worked as a waitress for six

19  years).  The ALJ properly relied on evidence demonstrating that Plaintiff was able to

20  work despite mental health symptoms.

mood was anxious with pressured speech and loud volume; however, she also exhibited normal motor functions; logical thought processes; good insight and judgment; and normal intellect. Tr. 28 (citing Tr. 349). Plaintiff began counseling and medication management. Tr. 28 (citing Tr. 349-50). As another example, the ALJ noted at an evaluation for medication administration two months later, Plaintiff was well kempt and appropriately attired; her mood was fair; speech was clear and coherent; attention span and both remote and short-term memory were intact. Tr. 28 (citing Tr. 355). In February 2011, Dr. Zimberg noted Plaintiff "appeared in fair spirits with some display of humor." Tr. 28 (citing Tr. 334, 352).

The ALJ further explained that in October 2011, Jeanette Higgins, Psy.D., performed a psychological evaluation of Plaintiff. Tr. 29 (citing Tr. 384-87). Plaintiff reported that her depressive symptoms were "the worst [they had] ever been," and she experienced suicidal ideation "all day, every day"; Tr. 29 (citing Tr. 384). Plaintiff also reported two suicide attempts in the previous six months; as the ALJ pointed out, there is no record of medical treatment or evidence to support this statement. *Id*. Moreover, although Plaintiff reported significant difficulty with bathing, grooming, and housework due to depressive symptoms, Dr. Higgins observed that Plaintiff's grooming was adequate and speech was within normal limits. Plaintiff exhibited no motor abnormalities, and her behavioral approach was cooperative. Tr. 29 (citing Tr. 385). The ALJ credited Dr. Higgins' opinion that

1   Plaintiff could likely function in a work environment that did not require interaction

2   with the public or contact with many co-workers.  Tr. 29 (citing Tr. 386).  The ALJ

3   noted that, at an evaluation about two months later, similar limitations were

4   assessed.  Tr. 29 (citing Tr. 559-567).  The minimal treatment history and lack of

5   objective findings do not support Plaintiff's allegations of disabling mental

6   limitations.

7   Here, the medical evidence of record was susceptible to more than one

8   rational conclusion, and therefore the ALJ's conclusion as to the inconsistencies

9   between Plaintiff's alleged impairments, and the overall record, must be upheld.

10   Because an ALJ may discount symptom testimony based on lack of medical

11   evidence, as long as it is not the sole basis for discounting a claimant's testimony,

12   the ALJ did not err when he found Plaintiff's complaints exceeded and were not

13   supported by objective and examination findings.

14       *3.  Daily Activities*

15       Third, the ALJ found that the level of limitation that Plaintiff alleged was

16   inconsistent with her proven ability to engage in a variety of activities.  Tr. 31.  A

17   claimant's reported daily activities can form the basis for an adverse credibility

18   determination if they consist of activities that contradict the claimant's "other

19   testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*,

20   495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th

Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). Here, the ALJ found, for example, that Plaintiff traveled to California in February 2011, Tr. 28 (citing Tr. 334); traveled to help care for her ill father in December 2011, Tr. 27, 29 (citing Tr. 418); attended classes all day at the Department of Vocational Rehabilitation (DVR), Tr. 30 (citing Tr. 504); despite feeling "stressed and fatigued" from the DVR classes, Plaintiff planned to start classes in 2012 to obtain a bachelor's degree, Tr. 30 (citing Tr. 518);[2] and as of September 2012 was in fact attending school, Tr. 31. In addition, the record shows that Plaintiff did laundry, housekeeping, meal preparation, shopping, played on her computer, worked on math assignments on the computer, wrote short essays for an English class, watched

---

[2] Plaintiff contends that the ALJ did not consider whether Plaintiff made the decision to attend school during a manic episode. ECF No. 15 at 17. Given that Plaintiff made the decision to start school in early 2012, and in fact, did start school more than six months later, in September 2012, the Court finds that the ALJ did not need to consider whether Plaintiff's decision to start school was the result of a manic episode.

television and was able to manage funds, Tr. 30; *see also* Tr. 421, which supported

the ALJ's finding.

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discredit a claimant's testimony when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

omitted). The ALJ noted that Plaintiff's activities, including attending day long

DVR classes, as well as later expressed willingness to attend school, suggest that her

symptoms were not as limiting as alleged. Tr. 30 (citing Tr. 518). The range of both

physical and mental activities that Plaintiff reported is inconsistent with the

disabling limitations she alleged. The ALJ properly relied on daily activities that

exceed alleged limitations when he assessed Plaintiff's credibility.

   *4. Inconsistencies in Plaintiff's Statements*

   Fourth, in discrediting Plaintiff's symptom claims, the ALJ cited

inconsistencies in Plaintiff statements. Tr. 30. In making a credibility evaluation,

the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v.

Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Contradiction with the medical record

is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v.

Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v.

1    *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Moreover, a strong indicator of

2    credibility is the consistency of the individual's own statements made in connection

3    with the claim for disability benefits and statements made to medical professionals.

4    S.S.R. 96-7p.

5              For example, in May 2012, Plaintiff reported that she had been abstinent from

6    alcohol for nine years.  Tr. 30 (citing Tr. 466).  However, the ALJ found this was

7    inconsistent with evidence that Plaintiff last drank in April 2011.  Tr. 30 (citing Tr.

8    382) (Plaintiff reported that she last drank on April 17, 2011, and had last used

9    marijuana on May 17, 2011).  The ALJ also found that less than a month after

10   Plaintiff reported to Dr. Rose that she had severe limitations in walking, sitting, and

11   standing, Tr. 421, she inconsistently reported to addiction recovery center personnel

12   that her physical health overall was "good."  Tr. 27 (citing Tr. 435).  Moreover,

13   Plaintiff reported to Dr. Higgins that she had two suicide attempts in the past six

14   months, but there was no objective evidence in the record to support such attempts.

15   Tr. 29.  Also, Plaintiff reported to Dr. Higgins that she had significant difficulty with

16   bathing, grooming, and housework due to her depression, but Dr. Higgins observed

17   that Plaintiff appeared appropriately groomed at her appointment.  Tr. 29.

18             The ALJ reasonably determined that Plaintiff's inconsistent statements

19   undermined her veracity as a witness.  An ALJ may support her adverse credibility

20   finding by citing to inconsistencies in the claimant's testimony, prior inconsistent

statements, and general inconsistencies in the record.  *Thomas*, 278 F.3d at 958-59

(inconsistencies in the claimant's testimony is properly considered); *Tommasetti v.*

*Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (prior inconsistent statements may be

considered); *Molina*, 674 F.3d at 1112 (An ALJ may support an adverse credibility

finding by citing to general inconsistencies in the record).

### 5. Failure to Seek Treatment as Recommended

Last, the ALJ found that Plaintiff's failure to follow treatment

recommendations diminished her credibility.  Tr. 28, 31.  For example, in April

2013, Plaintiff declined a physical therapy referral; instead she was given a referral

for an orthopedic assessment.  The ALJ noted that the record contains no evidence

Plaintiff followed through on the referral.  Tr. 28 (citing Tr. 702).  Moreover,

Plaintiff's refusal to see school counselors or participate in recommended group

therapy diminished her credibility.  Tr. 31 (citing Tr. 666) (in February 2013

Plaintiff reported difficulty processing information at school and said she felt

hopeless and discouraged); (citing Tr. 728) (college requested that Plaintiff see

school counselors but Plaintiff refused, believing it would impact her privacy and

studies).  Similarly, the ALJ noted that Tanya Keeble, M.D., evaluated Plaintiff in

June 2013.  Tr. 31 (citing Tr. 728).  Referring to Plaintiff's self-reported two suicide

attempts in 2011, D. Keeble stated that Plaintiff's collateral history suggested she

had used her prescription medication to "self-medicate into a stupor" Tr. 31 (citing

Tr. 728).  Dr. Keeble also noted that Plaintiff was on a long list of psychotropic medication that was "confounding" her status and might not be providing enough benefit to justify its continuation.  *Id*.  Dr. Keeble instead opined that Plaintiff would benefit from group therapy, but Plaintiff refused to do so, even though she qualified for such services.  Tr. 31 (citing Tr. 729).  Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment are properly considered when an ALJ assesses credibility.  *Smolen*, 80 F.3d at 1284.

Plaintiff now essentially contends that the ALJ should have weighed the conflicting evidence differently; for example, he should found Plaintiff's improvement with medication was short-lived, and providers' comments about Plaintiff's adequate grooming and appearance did not demonstrate a lack of symptoms.  ECF No. 15 at 16.  This Court disagrees.  As the ALJ reasoned, Plaintiff's level of functioning is reflected in the ability to maintain grooming, attend classes, and perform other daily tasks.

The ALJ, tasked with weighing contradictory evidence, set out a detailed and thorough examination of the record, stated his interpretation of the evidence, and made specific findings.  Tr. 26-32.  *See Batson v. Comm'r of Soc. Sec. Admin,* 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record . . . and if evidence exists to support more than one rational interpretation, we must defer to the

1  Commissioner's decision.").  Here, the ALJ's interpretation of the medical evidence

2  is reasonable.

3        In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

4  specific, clear and convincing reasons, supported by the record, for rejecting

5  Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

6  **B.  Medical Opinion Evidence**

7        Next, Plaintiff faults the ALJ for discrediting the opinions of treating and

8  examining sources and crediting those of reviewing sources.  ECF No. 15 at 18-20.

9        There are three types of physicians: "(1) those who treat the claimant (treating

10 physicians); (2) those who examine but do not treat the claimant (examining

11 physicians); and (3) those who neither examine nor treat the claimant but who

12 review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v.*

13 *Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally,

14 a treating physician's opinion carries more weight than an examining physician's,

15 and an examining physician's opinion carries more weight than a reviewing

16 physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are

17 explained than to those that are not, and to the opinions of specialists concerning

18 matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

19        If a treating or examining physician's opinion is uncontradicted, an ALJ may

20 reject it only by offering "clear and convincing reasons that are supported by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 22

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th

Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

only reject it by providing specific and legitimate reasons that are supported by

substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1.  Dr. Bot

Psychiatrist David Bot, M.D., treated Plaintiff for about seven months, from

April 13, 2011 to November 3, 2011.  Tr. 360-79, 388-98.  Dr. Bot submitted

updated records in April 2012, Tr. 445-50, opining that Plaintiff would have marked

limitations with respect to concentration, persistence or pace, as well as numerous

moderate limitations; additionally, he opined that Plaintiff had suffered four or more

periods of decompensation of extended duration.  Tr. 446, 448-50.  As Plaintiff

acknowledges, the ALJ gave Dr. Bot's opinions significant weight, yet did not credit

Dr. Bot's "paragraph B" findings with respect to periods of decompensation.  ECF

No. 15 at 18 (citing Tr. 22).  As discussed below, the ALJ rejected the paragraph B

findings, and some of Dr. Bot's other assessed limitations, because they are not

supported by Dr. Bot's own findings nor by the evidence as a whole.  Tr. 22.

1    This Court finds that the ALJ properly assigned Dr. Bot's April 2102 opinion,

2    with respect to paragraph "B" findings, as well as assessed limitations in activities of

3    daily living and concentration, less weight than other sources.  Because Dr. Bot's

4    opinion was contradicted, *see* Tr. 22-25 (noting the significant difference of opinion

5    between the accepted medical sources), the ALJ need only to have given specific

6    and legitimate reasoning supported by substantial evidence to reject it.  *Bayliss,* 427

7    F.3d at 1216.

8                    *a.  Assessed Limitations in Daily Activities*

9         First, the ALJ discounted Dr. Bot's opinion that Plaintiff's daily activities

10   were moderately limited because the record shows Plaintiff engaged in a variety of

11   daily activities with little or no difficulty, as previously discussed.  Tr. 22, 28.

12   Plaintiff traveled to California in February 2011, Tr. 28 (citing Tr. 334); traveled to

13   help care for her ill father in December 2011, Tr. 27, 29 (citing Tr. 418); attended

14   classes all day at the Department of Vocational Rehabilitation (DVR), Tr. 30 (citing

15   Tr. 504); despite feeling "stressed and fatigued" from the DVR classes, Plaintiff

16   planned to start classes in 2012 to earn a bachelor's degree, Tr. 30 (citing Tr. 518);

17   and in fact, did begin attending school in September 2012, Tr. 31.  The ALJ noted

18   that the record also shows that Plaintiff was casually dressed and groomed, Tr. 22

19   (citing Tr. 349); was well kempt and appropriately attired, Tr. 22 (citing Tr. 355);

20   reported she did laundry and cared for her cat.  Tr. 22 (citing Tr. 385).

1    Additionally, Dr. Higgins observed that Plaintiff arrived for an October 2011

2  appointment on time and unaccompanied; she drove herself to the appointment.  He

3  noted that she had relatively good dress, grooming, and hygiene.  Tr. 22 (citing Tr.

4  385-86).  In January 2012, Plaintiff told Dr. Rose that she cooked, cleaned, shopped

5  and drove, Tr. 22 (citing Tr. 421).  In May 2012, Plaintiff told Dr. Bostwick that she

6  did laundry, cleaned house, cooked, shared shopping duties, and took online classes.

7  Her leisure activities included researching and playing games on the computer,

8  watching television, and listening to music.  Tr. 22 (citing Tr. 470-71).  The ALJ

9  relied on Plaintiff's ability to appear repeatedly at appointments with generally good

10 grooming and hygiene, and to function independently in a variety of situations, when

11 he rejected Dr. Bot's more extreme limitations.

12    Because an ALJ may discount an opinion that is inconsistent with a claimant's

13 reported functioning, *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601-02

14 (9th Cir. 1999), the ALJ provided a specific and legitimate reason for affording Dr.

15 Bot's opinion limited weight.

16              *b.  Unsupported by Source's Own Findings*

17    Next, the ALJ discounted some of Dr. Bot's opinion because it was not

18 supported by his own findings.  Tr. 24 (citing Tr. 446, 448-49).  In April 2012, Dr.

19 Bot opined that Plaintiff's concentration was markedly limited, yet in his RFC he

20 assessed only moderate limitations in all of the categories that rate limitations in

concentration.  Tr. 24 (citing Tr. 446, 448-49).  An ALJ may properly reject

opinions that are internally inconsistent.  *Nguyen v. Chater*, 100 F.3d 1462, 1464

(9th Cir. 1996).  An ALJ is not obliged to credit medical opinions that are

unsupported by the medical source's own data or contradicted by the opinions of

other examining medical sources.  *Tommasetti,* 533 F.3d at 1041.

### c. Paragraph "B" Criteria

The ALJ properly relied on the inconsistency of Dr. Bot's paragraph "B"

criteria with the record as a whole when he gave it little weight.  *See Chaudhry v.*

*Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of

any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings."); *Batson,* 359 F.3d at 1195 (an ALJ

may discredit physicians' opinions that are unsupported by the record as a whole)

(citation omitted).

The ALJ rejected Dr. Bot's (and Dr. Bostwick's) opinion that Plaintiff

suffered four episodes of decompensation of extended duration because neither

source explained the basis for the opinion, and it is unsupported by the record as a

whole.  Tr. 22 (citing Tr. 446).  The ALJ observed that the paragraph B criteria of

Listings 12.04, 12.06, and 12.08 require (as to each) mental impairments that result

in at least two of the following: marked restrictions of activities of daily living;

marked difficulties in maintaining social functioning; marked difficulties in

1   maintaining concentration, persistence or pace; or "repeated episodes of

2   decompensation, each of extended duration."  Tr. 22 (referring to 20 C.F.R. Part

3   404, Subpt. P, App. 2).

4        The record does not support Dr. Bot's opinion that Plaintiff suffered four

5   extended episodes of decompensation.  Tr. 22 (citing Tr. 446).  Instead, the record

6   shows Plaintiff told Dr. Arnold that she had been hospitalized for a week in 1995.

7   Tr. 560.  In December 2012, Plaintiff presented to the hospital with complaints of

8   suicidal ideation.  She told providers that she had twice attempted suicide in 2011 by

9   overdosing on medication Tr. 24 (citing Tr. 736).  However, at the same time, Dr.

10  Smith noted Plaintiff demonstrated a broad range of affect.  She laughed and joked

11  with him and her significant other, and was discharged the same day.  Tr. 24 (citing

12  Tr. 736).  The ALJ pointed out that there is no evidence to substantiate the two

13  reported overdose attempts in 2011.  Tr. 24.  Moreover, even if credited, Plaintiff's

14  statements do not meet the definition of "repeated episodes decompensation, each of

15  extended duration,"  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04; 12.06; 12.08,

16  defined as "three episodes within one year, or an average of once every four months,

17  each lasting for at least two weeks," *id.* § 12.00C.4.

18       Because an ALJ may reject any opinion that is internally inconsistent, as well

19  as opinions that are inconsistent with the record as a whole, *Batson*, 359 F.3d at

20

1  1195, the ALJ provided another specific and legitimate reason for affording Dr.

2  Bot's paragraph B and functional assessment limited weight.

3      *2.  Dr. Bostwick*

4      Allen Bostwick, Ph.D., evaluated Plaintiff in July 2012.  Tr. 467-78.  The ALJ

5  rejected some of Dr. Bostwick's assessed limitations, including, as discussed, his

6  paragraph B findings.  Tr. 24-25.  The ALJ discredited Dr. Bostwick's opinions for

7  substantially similar reasons as applied to Dr. Bot's opinions. Tr. 22.

8      The ALJ need only have provided specific and legitimate reasons for rejecting

9  Dr. Bostwick's opinion as it was contradicted by other sources, including Dr.

10  Higgins.  *See Bayliss*, 427 F.3d at 1216.

11          a. *Unsupported by Source's Own Findings*

12      First, the ALJ discounted some of Dr. Bostwick's opinion because it was not

13  supported by his own findings.  Tr. 22 (citing Tr. 461).  For example, in July 2012

14  Dr. Bostwick opined that Plaintiff's social functioning was markedly limited, Tr.

15  461, yet in his RFC he assessed only moderate limitations in all of the categories that

16  rate limitations in social functioning except one, the ability to accept instructions and

17  respond appropriately to criticism from supervisors.  Tr. 23 (citing Tr. 463-65).  In

18  this sole area, Dr. Bostwick opined that Plaintiff's limitations were moderate to

19  marked.  Tr. 23 (citing Tr. 463).  An ALJ may properly reject opinions that are

20  internally inconsistent, *Nguyen*, 100 F.3d at 1464.  An ALJ is not obliged to credit

medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti,* 533 F.3d at 1041.

### b. Inconsistent With Record as a Whole

Second, the ALJ properly relied on the inconsistency of Dr. Bostwick's assessed marked social limitations with the record as a whole when he gave it little weight. *See Batson,* 359 F.3d at 1195 (an ALJ may discredit the physicians' opinions that are unsupported by the record as a whole) (citation omitted).

The ALJ found that the record as a whole supports moderate, rather than marked, limitations in social functioning. Tr. 22-23 (citing Tr. 461, 472) (Dr. Bostwick noted that Plaintiff is socially cooperative and generally pleasant during the evaluation; she presented in no acute emotional distress; her mood was euthymic; and she had a bright affect). The ALJ acknowledged that Plaintiff's bipolar disorder has caused some social limitations, including reports by providers that, at times, Plaintiff was hypomanic; however, the bulk of the remaining evidence supports no more than moderate social limitation. For instance, Plaintiff reported that she was able to leave home by herself, Tr. 23 (citing Tr. 215), and providers reported that she arrived at appointments unaccompanied, Tr. 23 (citing Tr. 472, 554).

1    Additionally, the ALJ found that Plaintiff's ability to maintain a romantic

2    relationship with a significant other, despite alleging that she has mental

3    impairments that limit her ability to get along with others, indicates Plaintiff

4    experiences no more than moderate social limitations.  Tr. 23 (citing Tr. 217)

5    (Plaintiff reported that she shopped with her friend during off hours because anxiety

6    made it difficult for her to be around other people).  Because the ALJ may discount

7    an opinion that is inconsistent with a claimant's reported functioning, *Morgan*, 169

8    F.3d at 601-02, the ALJ provided another specific, legitimate reason for affording

9    Dr. Bostwick's opinion limited weight.

10                   *c.  Paragraph "B" Criteria*

11    Finally, as noted, the ALJ considered Dr. Bostwick's paragraph "B' finding.

12    Dr. Bostwick, like Dr. Bot, completed this assessment on a standardized check-box

13    form with no support or explanation for the opinion.  Dr. Bostwick did not elaborate

14    on what episodes of decompensation Plaintiff had experienced.  Tr. 24 (citing Tr.

15    461).  Given, as noted, the paucity of evidence of any episodes of decompensation,

16    the ALJ suggested that in order to adopt the decompensation findings assessed by

17    both Dr. Bot and Dr. Bostwick, the ALJ would have to credit Plaintiff's unreliable

18    self-report.  Tr. 24-25 (citing Tr. 461).  Because an ALJ may discount an opinion

19    that is largely based on a claimant's unreliable self-report, *Tommasetti*, 533 F.3d at

20    1041, and may properly discount an opinion that is unsupported by clinical findings,

*Batson*, 359 F. 3d at 1195, the ALJ provided additional specific and legitimate

reasons for affording Dr. Bostwick's opinion, including his paragraph "B"

assessment, limited weight.

### 3. Dr. Rosekrans

Frank Rosekrans, Ph.D., evaluated Plaintiff in September 2012 and assessed

severe limitations. Tr. 24 (citing Tr. 553).  Specifically, Dr. Rosekrans opined that

Plaintiff's ability to perform activities within a schedule, maintain regular

attendance, be punctual within customary tolerances, and complete a normal

workday and workweek without interruptions from psychologically based symptoms

were severe.  Tr. 24 (citing Tr. 553).  The ALJ rejected this limitation, in part, based

on the opinions of Dr. Beaty and Dr. Bostwick, who both found Plaintiff was

moderately limited with respect to concentration, persistence, or pace.  Tr. 24 (citing

Tr. 93, 461).  Because Dr. Rosekrans's opinion is contradicted, the ALJ need only

have provided specific and legitimate reasons for rejecting it.  *See Bayliss*, 427 F.3d

at 1216.

### a. Unsupported by Source's Own Findings

First, the ALJ assigned little weight to Dr. Rosekrans's assessed severe

limitation in the areas of concentration, persistence, or pace, because it was

inconsistent with Dr. Rosenkrans' other findings.  Tr. 24 (citing Tr. 553).  In

September 2012, Dr. Rosekrans assessed severe limitations, defined as an inability

to perform the activity other than in a sheltered workshop, in the areas of (1)

performing activities within a schedule, maintaining regular attendance, and being

punctual within customary tolerances without special supervision; and (2)

completing a normal workday and workweek without interruptions from

psychologically based symptoms.  Yet in the same evaluation, Dr. Rosekrans opined

Plaintiff's functioning in the same category was "no limitation," "mild limitation,"

or "moderate limitation."  Tr. 24 (citing Tr. 553).  An ALJ is not required to credit

medical opinions that are unsupported by the source's own data and/or contradicted

by the opinions of other examining medical sources.  *Tommasetti,* 533 F.3d at 1041.

*b. Assessed Severe Limitations Unsupported by Record as a Whole*

Next, the ALJ properly relied on the inconsistency of Dr. Rosekrans' assessed

severe limitations with the record as a whole when he gave it little weight.  Tr. 23-24

(citing Tr. 553).  The ALJ rejected these limitations, in part, based on the opinions of

Dr. Beaty and Dr. Bostwick, who both found Plaintiff was moderately limited with

respect to concentration, persistence, or pace.  Tr. 24 (citing Tr. 93, 461).  Further,

Dr. Bostwick noted that Plaintiff had a low average working memory and mild to

moderate impairment on the Trails B test, but her attention in social concentration

was within functional limits.  Tr. 24 (citing Tr. 473).

Because an ALJ is not required to credit any medical opinion that is

unsupported by the record as a whole, *Batson,* 359 F.3d at 1195, the ALJ provided

another specific and legitimate reason for affording Dr. Rosekrans's opinion limited weight.

### 4. Reviewing Sources

Next, Plaintiff contends the ALJ erred by "accepting consulting source opinions over the examining physicians' opinions." ECF No. 15 at 20. Plaintiff does not argue with specificity that the ALJ improperly relied solely on specific unnamed consulting source opinions to justify rejecting certain medical opinions. Thus, the Court declines to address this issue. *See Carmickle*, 533 at 1161 n.2.

Last, Plaintiff contends that "had the aforementioned [treating and examining] opinions been properly considered," the RFC would be assessed differently. ECF No. 15 at 21. The Court has previously addressed this contention and found no error.

### CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.    Defendant's motion for summary judgment (ECF No. 17) is **GRANTED.**

2.    Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

1    DATED this 17th day of August, 2016.

2                                                    *S/Mary K. Dimke*
                                          MARY K. DIMKE
3                           UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 34